**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANNE L. PEGGINS, | No. 2:12-CV-2879-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 15) and defendant's cross-motion for summary judgment (Doc. 21).

///

///

///

1

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on March 1, 2010. In the application, plaintiff claims that disability began on August 1, 2009. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on August 4, 2011, before Administrative Law Judge ("ALJ") Sara A. Gillis. In a September 2, 2011, decision, the ALJ made the following relevant findings:

1. The claimant has the following severe impairment(s) since the alleged onset date of August 1, 2009: cervical disc disease; obesity; lumbar degenerative disc disease with history of back surgery; and degenerative joint disease of the knees;

2. The claimant has the following severe impairment(s) since the established onset date of June 12, 2010: cervical disc disease; obesity; lumbar degenerative disc disease with history of back surgery; degenerative joint disease of the knees; and bipolar disorder;

3. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

4. The claimant has the following residual functional capacity prior to June 12, 2010: light work except she can lift/carry 20 pounds occasionally and 10 pounds frequently, can stand/walk two of eight hours, sit six of eight hours, and occasionally climb ramps and stairs or stoop, kneel, crouch, and crawl;

5. Beginning on June 12, 2010, the claimant became unable to perform even simple, repetitive work due to reduced cognition;

6. Prior to June 12, 2010, the claimant was capable of performing her past relevant work as an administrative assistant, office manager, supervisor, secretary, and customer service representative;

7. Beginning on June 12, 2010, the claimant's residual functional capacity precludes her past relevant work; and

8. Considering the claimant's age, education, work experience, residual functional capacity beginning on June 12, 2010, and vocational expert testimony, there are no jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on September 28, 2012, this appeal followed challenging the determination that plaintiff was not disabled prior to June 12, 2010.

/ / /

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### III.  DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) the ALJ erred in concluding that plaintiff's bipolar disorder is non-severe prior to June 12, 2010; (2) the ALJ erred in evaluating the medical opinion evidence; and (3) the ALJ erred in concluding that plaintiff's testimony was not credible as to the period prior to June 12, 2010.

**A.  Severity Analysis**

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities.  See 20 C.F.R. §§ 404.1520(c), 416.920(c).[1]  In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).  The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient.  See id.

/ / /

/ / /

---

[1] Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

Regarding the severity of plaintiff's bipolar disorder, the ALJ stated:

> With respect to her mental complaints, the evidence prior to June 12, 2010, indicates she had a bipolar disorder but the record does not show evidence of a significant or severe mental impairment. Mercy Medical Group treatment records document she appeared oriented, only mildly depressed, and there was no mention of impairment in cognitive functioning. (Ex 1F, 2F).

According to plaintiff, the ALJ erred by failing to consider treatment notes from Drs. Karl Zeff, Theo Vermont, and Dale Blunden during the time period prior to June 12, 2010, which ". . . reflect Ms. Peggins suffered increased irritability, mood swings, low motivation, fatigue, anxiety, depressed mood, tearfulness, feelings of self-hate, mental slowing, memory and concentration declines, and social withdrawal." Plaintiff argues:

> But despite treating psychologists' diagnoses and Ms. Peggins' numerous resulting limitations, the ALJ failed to make any inquiry at step two as to whether her alleged mental impairments limited her ability to perform basic work activities as of the [alleged onset date]. The ALJ concluded, without explanation, that Ms. Peggins' mental impairments did not prevent her from engaging in substantial gainful activity prior to June 12, 2010. (AR at 15-16). . . .

Plaintiff's argument is unpersuasive. Specifically, while the doctors' treating records do in fact reflect the symptoms outlined by plaintiff, none offer any opinion as to functional limitations. Indeed, in plaintiff's own summary of these treating records, plaintiff does not point to any specific instance of a doctor opining as to functional limitations on plaintiff's ability to work caused by bipolar disorder prior to June 12, 2010. Further, the same treatment records also show that plaintiff said in October 2009 that she "feels positive" and suggested going off her medication. Additionally, though Dr. Blunden also diagnosed bipolar disorder, he assigned plaintiff a GAF score of 90, indicating a high level of functioning. As defendant correctly notes, the mere existence of a diagnosis of bipolar disorder does not establish that it is a severe impairment at step two. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). Plaintiff did not meet her burden of providing the agency with evidence that her bipolar disorder had more than a minimal affect on her ability to work prior to June 12, 2010.

### B. Evaluation of Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any

1    conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

2    1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

3    see also Magallanes, 881 F.2d at 751.

4           According to plaintiff, the ALJ improperly evaluated Dr. Blunden's opinions

5    regarding her bipolar disorder prior to June 12, 2010.  Plaintiff argues:

> . . . Dr. Blunden's [June 12, 2010] letter unequivocally states the medical opinions and conclusions set forth therein relate exclusively to the August 2008 through July 2009 period of treatment.  (AR at 298).  Thus, while the ALJ gave "great weight to the findings and conclusions of Dr. Blunden" as of the June 12, 2010, date of his letter, the ALJ was required to consider Dr. Blunden's opinions for the time period they actually relate to. . . .

10   Plaintiff also argues that the ALJ erred with respect to the opinion of examining psychologist Dr.

11   Snyder.  Plaintiff states:

> Likewise, in partially denying Ms. Peggins benefits, the ALJ failed to mention the July 12, 2010, assessment from the examining psychologist, Sheila B. Snyder, Ph.D.  (See AR at 303-306).  There, Dr. Snyder categorically assessed that Ms. Peggins "could not be hired and is functionally seriously disabled in terms of movement and concentration." (AR at 306).  At the very least, the ALJ was required to provide reasons why this July 2010 snapshot of Ms. Peggins' mental functioning was not present as of the [alleged onset date] or any time prior to June 12, 2010. (See SSR 83-20).

17          As to Dr. Blunden, the court does not agree with plaintiff that the ALJ failed to

18   consider the June 12, 2010, letter for the period August 2008 through July 2009.  To the contrary,

19   the ALJ considered that period and determined that, while the record shows diagnoses of bipolar

20   disorder, the record does not contain evidence that the condition more than minimally affected

21   plaintiff's ability to work during that time.  For this same reason, the court finds that the ALJ

22   properly considered Dr. Snyder's July 2010 assessment.  To the extent plaintiff believes that the

23   "July 2010 snapshot" of Dr. Snyder's assessment reflected functional mental limitations prior to

24   June 12, 2010, it was plaintiff's burden to provide the agency with such evidence.

25   / / /

26   / / /

1       **C.     Plaintiff's Credibility**

2       The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the "... mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v.

Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As to plaintiff's credibility, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible prior to June 12, 2010, to the extent they are inconsistent with the residual functional capacity assessment.

Plaintiff argues: ". . .[T]he ALJ wholly failed to consider records from Ms. Peggins' treating psychologists which reflect debilitating mental impairments in 2008 and 2009 and support Ms. Peggins' allegations for those time periods. . . ."

At the outset, the court notes that, while plaintiff complains that the ALJ failed to consider evidence supporting her "allegations for those time periods," plaintiff does not mention what those allegations are. In any event, the court does not agree with plaintiff that the ALJ failed to articulate sufficient reasons for rejecting her credibility for the period prior to June 12, 2010. Specifically, the ALJ noted that plaintiff's allegations (whatever those may be) of disabling mental impairments prior to June 2010 are not supported by objective medical evidence. The court finds that this statement is supported by substantial evidence. In particular, and as discussed above, while various doctors diagnosed bipolar disorder, there is no medical evidence showing that this condition was severe prior to June 12, 2010. Other than restating the observations made by the treating mental health providers, plaintiff does not cite to any such evidence.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 15) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 21) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: September 29, 2014

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE